ROBERT C. SCHLEIN
California State Bar No. 97876
401 "B" Street, Suite 2209
San Diego, CA 92101
Telephone: (619) 235-9026
Email: robert@rcslaw.org

*Attorney for EZEQUIEL MANZO-GAITAN*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case: 08CR00094-JLS |
| Plaintiff, | Date: February 15, 2008<br>Time: 1:30 p.m. |
| v. | |
| EZEQUIEL MANZO-GAITAN, | DECLARATION OF ROBERT C. SCHLEIN IN SUPPORT OF DEFENDANT'S |
| Defendant. | MOTION FOR ORDER TO DETERMINE DEFENDANT'S COMPETENCY PURSUANT TO 18 U.S.C. §§ 4241, 4247 |

I, Robert C. Schlein, am the attorney of record for Defendant Manzo-Gaitan. I believe that my client, EZEQUIEL MANZO-GAITAN, may have a mental disease or defect that prevents him from being able to understand the nature and consequences of the proceedings pending against him, and/or prevent him from being able to competently assist properly in his defense, and therefore I am requesting he be examined by a mental health expert.

My belief as to Mr. Manzo-Gaitan's mental condition is based upon the following facts:

(1) During Mr. Manzo-Gaitan's initial interview with defense counsel he exhibited signs of having a mental disease or illness. He was extremely skittish; he seemed unable to concentrate or carry a conversation. He did not seem aware that he was facing criminal charges in Federal Court. Mr. Manzo-Gaitan did not seem to understand the nature or seriousness of the charges against him.

(2) On January 15, 2008, I appeared in court for Mr. Manzo-Gaitan for his preliminary appearance. Mr. Manzo-Gaitan behaved quite strangely in court. His behavior seemed to indicate that he did not understand the nature or seriousness of the proceedings. He was shaking uncontrollably and did not

1  seem to understand the directions given to him by court personnel. He initially refused to wear the headset
2  which is needed so that he could hear the translator relate the court proceedings in Spanish. When I
3  repeatedly indicated to him that he should wear them, he placed them on his head but not over his ears. He
4  seemed disoriented and unaware of his situation.

5  (3) On January 22, 2008, my interpreter Nellie Yanez and I visited Mr. Manzo-Gaitan at the
6  Metropolitan Correctional Center for the purpose of interviewing him to ascertain his general mental state.
7  During the course of this interview, Mr. Manzo-Gaitan relayed the following information to us, which I
8  believe supports my conclusion that he may be suffering from a mental disease or defect:

9  (A) Mr. Manzo-Gaitan informed us that he hears voices in his head that tell him what
10  to do. He describes feeling as though there is another person inside of him who is
11  "not him." He claims that he sees feet following him around wherever he goes.

12  (B) Mr. Manzo-Gaitan told us that he attempted to commit suicide on numerous
13  occasions; he has attempted to shoot himself, hang himself, cut his wrists, and claims
14  to have jumped off a 2 story building head first.

15  ( C) During our interview, Mr. Manzo-Gaitan's affect was flat; he seemed confused
16  and disoriented.

17  (D) Mr. Manzo-Gaitan stated that he suffers from depression, and has taken a
18  number of psycho-tropic medications such as "Prozac". He also complained of other
19  medical problems such as diabetes, high cholesterol, and injuries sustained from his
20  treatment by the United States Border Patrol.

21  For the above-mentioned reasons, I believe Mr. Manzo-Gaitan should be examined by a
22  qualified expert to determine whether he is mentally competent to stand trial. I swear under the penalty of
23  perjury that the foregoing is true and correct. Signed this 23rd day of January, in San Diego, California.

25  Dated: January 23, 2008         /s/ROBERT C. SCHLEIN
                                     Robert C. Schlein