KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-2757
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0094-JLS |
| Plaintiff, | ) ) ) | **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY** |
| v. | ) ) | |
| EZEQUIEL MANZO-GAITAN, | ) ) | Date:  February 15, 2008 |
| Defendant. | ) ) ) | Time:  1:30 p.m.<br>Court: The Hon. Janis L. Sammartino |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motion for Discovery. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts and Memorandum of Points and Authorities.

//

//

//

//

//

Criminal Case No. 08cr0094-JLS

# I

# STATEMENT OF FACTS

**A.   Defendant's Apprehension**

On December 24, 2007, at about 11:55 p.m., Senior Border Patrol Agent Joel Nesbit responded to a Remote Video Surveillance System ("RVSS") report of a group of suspected undocumented aliens running north from the primary international boundary fence near "La Libertad."  This area is approximately two miles east of the San Ysidro Port of Entry and adjacent to the international boundary fence.  When Agent Nesbit arrived at the scene, the group of individuals attempted to return south in Mexico.  After a short pursuit, Agent Nesbit detained two individuals, including an individual later identified as Ezequiel Manzo-Gaitan ("Defendant").  The Defendant admitted to being a citizen and national of Mexico with no documents to legally remain in the United States.  Defendant was transported to the Imperial Beach Border Patrol Station for processing.

At approximately 12:40 a.m. on December 25, 2007, after being transported to the border patrol station, Defendant began to complain of pain on his inner right arm due to lacerations he sustained while climbing over the primary fence and collapsed in the processing area.  He was transported to the UCSD hospital emergency room where he was treated for his arm injuries and claims of tuberculosis.  He was released from the hospital and transported back to the Imperial Beach Border Patrol Station at about 6:30 a.m.

**B.   Defendant's Criminal and Immigration History**

Defendant has numerous arrests and convictions in the Southern District of California.  In January, 1997, Defendant was convicted under the name Armando Rodriguez-Hernandez of Illegal Re-entry in violation of Title 8, United States Code, Section 1326, for which he received a two-year term of imprisonment from The Honorable Rudi M. Brewster.

Defendant's other prior convictions include an April, 1989, conviction in the California Superior Court in San Diego for Possession of a Controlled Substance for Sale in violation of California Health & Safety Code Section 11351, for which he received a sentence of three-years imprisonment after his probation was revoked.  In January, 1991, Defendant sustained a conviction in the California Superior Court in San Diego for Possession/Purchase Cocaine Base For Sale in violation of California Health &

Safety Code Section 11351.5, for which he received a five-year term of imprisonment.

Defendant also has prior convictions for Evading a Peace Officer in Disregard for Safety (in violation of California Vehicular Code 2800.2(a)) and False Identification to a Peace Officer (in violation of California Penal Code 148.9.)

Defendant appeared before an Immigration Judge for a deportation hearing on June 7, 1993, and was physically removed from the United States to Mexico on June 8, 1993. Defendant was most recently physically removed to Mexico on November 14, 2007, approximately six weeks before the instant offense.

**C.     Defendant's Post-Miranda Confession**

On December 26, 2007, at approximately 8:30 a.m., Defendant waived his Miranda rights and agreed to be interviewed by Supervisory Border Patrol Agent Roberto Del Villar. Defendant stated that his true name was Francisco Mujia-Cleto, but admitted that he has previously used the name Armando Rodriguez-Fernandez. Defendant stated he was born in Veracruz, Mexico. He stated that he is a citizen and national of Mexico with no documents allowing him to legally remain in the United States. Defendant further stated that he has been previously deported by an immigration judge, and that he entered the United States by jumping the International Boundary Fence on December 24, 2007 at around midnight.

**II**

**DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**

On January 22, 2008, the Government produced 80 pages of discovery which included the reports from the Border Patrol Agents, summaries of the statements made by Defendant, documentation regarding Defendant's criminal history and conviction documents. On February 1, 2008, the Government produced one DVD recording of Defendant's post-Miranda confession.

**(1)     Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has provided all of the Defendant's statements that are known to the undersigned Assistant U.S.

1 Attorney at this date. If the Government discovers additional oral or written statements that require
2 disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

3 **(2)     Arrest Reports, Notes, and Dispatch Tapes**

4 The Government has provided Defendant with all known reports related to Defendant's arrest
5 in this case. The Government is in the process of determining whether there are any additional reports
6 related to the remote video surveillance and whether there are any dispatch tapes. If such reports or
7 tapes are identified, the Government will produce them to Defendant. The Government will continue
8 to comply with its obligation to provide to Defendant all reports subject to Rule 16(a)(1)(A) and (B).

9 The Government has no objection to the preservation of the agents' handwritten notes. See
10 United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes
11 of interviews of an accused or prospective government witnesses). However, as explained above, the
12 Government objects to providing Defendant with a copy of the rough notes at this time. The
13 Government is not required to produce the notes pursuant to the Jencks Act because the notes do not
14 constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a
15 substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the
16 witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady
17 material because, as discussed further, the notes do not present any material exculpatory information
18 or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future
19 evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made
20 available to Defendant.

21 **(3)     Brady Material**

22 The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S.
23 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such
24 evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady
25 covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who
26 testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United
27 States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not
28 requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).

1 "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001). Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(4) & (5)   Information That May Result in a Lower Sentence Under the Guidelines or 18 U.S.C. Section 3553**

The Government has provided and will continue to provide Defendant with all Brady material that may result in mitigation of Defendant's sentence. Nevertheless, the Government is not required to provide information bearing on Defendant's sentence until after Defendant's conviction or guilty plea and prior to her sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the evidence is disclosed to the defendant at a time when the disclosure remains in value").

**(6)   Defendant's Prior Record**

The Government has already provided Defendant with documentation regarding his prior criminal record, including judgment and conviction documents in the possession of the Assistant U.S. Attorney, and has thereby fulfilled its duty of discovery under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there

are any additional documents reflecting Defendant's prior criminal record, the Government will provide those to Defendant.

(7) **Notice Under FRE 404(b)**

The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(8)    Evidence Seized**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**(9)    Request for Preservation of Evidence**

The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government has made every effort to preserve evidence it deems to be relevant and material to this case, including sending a letter to the agency in charge on December 3, 2007 requesting the specific preservation of evidence. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

//

**(10)   Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(11)   Evidence of Bias or Motive to Lie**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses. If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(12)   Impeachment Evidence**

As discussed elsewhere, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

**(13)   Evidence of Criminal Investigation of Any Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

**(14)   Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects

1 to providing any evidence that a witness has ever used narcotics or other controlled substance, or has
2 ever been an alcoholic because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>,
3 <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

4 **(15)   <u>Witness Addresses</u>**

5 The Government has already provided Defendant with the reports containing the names, work
6 addresses, and telephone numbers of the inspectors, officers and special agents whom asked questions
7 of Defendant and found the marijuana in the vehicle.  In its trial memorandum, the Government will
8 provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although
9 delivery of such a witness list is not required.  <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir.
10 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).

11 The Government strenuously objects to providing the home addresses or the home or personal
12 cellular telephone numbers to Defendant.  In non-capital cases, the Government is not even required to
13 disclose the names of its witnesses prior to trial.  <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir
14 1992); (<u>citing</u> <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103
15 F.23d 837, 841 (9th Cir. 1996); <u>see</u> <u>also</u> <u>United States v. Bejasa</u>, 904 F.2d 137 (2d Cir. 1990) (holding
16 that United States did not improperly deny defendant access to government witnesses whose telephone
17 numbers and addresses the government refused to provide because defendant knew the identities of the
18 government witnesses and presumably knew their telephone numbers or could have contacted them
19 through the exercise of due diligence).

20 **(16)   <u>Name of Witnesses Favorable to the Defendant</u>**

21 The Government is not aware of the names of any witnesses favorable to the Defendant's case.
22 If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will
23 be promptly provided.

24 **(17)   <u>Statements Relevant to the Defense</u>**

25 The Government will provide all statements relevant to Defendant as required by Rule 16,
26 <u>Brady</u>, and <u>Jencks</u>.   The Government is not all possible information and evidence regarding any
27 speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (<u>per</u> <u>curiam</u>)
28 (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory

evidence are not subject to disclosure under Brady).

**(18)  Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e).  If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  There is no applicable Jencks material at this time.  If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act relevant to the testifying witness(es).

**(19)  Giglio Information**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).  The Government is not aware of any Giglio information related to this case.  If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(20)  Scientific Tests or Examinations**

At this time, the Government is not aware of any scientific tests or examinations performed in connection with this case.  If the Government becomes aware of such evidence, the results of any scientific tests or examinations will be provided to Defendant in accordance with Rule 16(a)(1)(F) when those tests results are received**.**

**(21)  Henthorn Material**

Case 3:08-cr-00094-JLS   Document 12   Filed 02/05/2008   Page 10 of 12

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**(22)    Informants and Cooperating Witnesses**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002). The Government is not aware of any Giglio information related to this case. If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(23)    Expert Witnesses**

The Government recognizes its obligation under Rule 16(a)(1)(G) to provide a defendant with a written summary of any testimony that the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief. At this time, no such report exists. If and when such a report is generated, the Government will comply with its obligations to produce the discovery to the Defendant.

### III

### DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

//

//

10    Criminal Case No. 08cr0094-JLS

//

**IV**

**CONCLUSION**

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed.

DATED: February 5, 2008.

                                         Respectfully submitted,

                                         KAREN P. HEWITT
                                         United States Attorney

                                         /s/***Rebecca Kanter***
                                         REBECCA S. KANTER
                                         Assistant U.S. Attorney
                                         Attorneys for Plaintiff
                                         United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0094-JLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| EZEQUIEL MANZO-GAITAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Robert C. Schlein

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 5, 2008.

               /s/ ***Rebecca Kanter***
               REBECCA S. KANTER