ROBERT C. SCHLEIN
California State Bar No. 97876
401 "B" Street, Suite 2209
San Diego, CA 92101
Telephone: (619) 235-9026
Email: robert@rcslaw.org

*Attorney for Ezequiel Manzo-Gaitan*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>EZEQUIEL MANZO-GAITAN,<br><br>         Defendant. | Case:  08cr0094-JLS<br><br>Date:  September 26, 2008<br>Time:  2 p.m.<br><br>**STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND GRANT AN EVIDENTIARY HEARING** |

I.

STATEMENT OF FACTS

The following statement of facts is based, in part, on materials received from the government. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard. The government alleges the following:

"On or about December 24, 2007, within the Southern District of California, defendant, Ezequiel Manzo-Gaitan, an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General or his designated successor, and the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's re-application for admission into the United States;  in violation of Title 8 United States Code, Section 1326."

A superceding indictment was filed on March 5, 2008, alleging:

"On or about December 24, 2007, within the Southern District of California, defendant Ezequiel

1  Manzo-Gaitan, an alien, knowingly and intentionally attempted to enter the United States of America with
2  the purpose, i.e. conscious desire, to enter the United States without the express consent of the Attorney
3  General of the United States or his designated successor, the Secretary of the Department of Homeland
4  Security, after having been previously excluded, deported and removed from the United States to Mexico,
5  and not having obtained said express consent to reapply for admission thereto; and committed an overt act
6  to wit, crossing the border from Mexico into the United States, that was a substantial step toward
7  committing the offense, all in violation of Title 8, United States Code, Sections 1326(a) and (b).  It is further
8  alleged that defendant Ezequiel Manzo-Gaitan was removed from the United States subsequent to May 20,
9  1999."

10        This charge was filed against Defendant MANZO-GAITAN pursuant to his arrest on December
11  24, 2007.  The government alleges that the following facts are the basis for his arrest: At approximately
12  11:55 P.M., the RVSS (Remote Video Surveillance System) operator advised via agency radio a group of
13  individuals running north from the Primary border fence near the area commonly known as "Libertad". This
14  area is approximately two miles east of the San Ysidro, California, Port of Entry. While performing All
15  Terrain Vehicle (ATV) operations, Senior Patrol Agent J. Nesbit, responded to the area. The government
16  alleges that defendant EZEQUIEL MANZO-GAITAN and a partner attempted to return south into Mexico
17  after the arrival of Agent Nesbit. After a short pursuit, Agent Nesbit conducted an immigration inspection
18  on both individuals. Allegedly without proper documents, Agent Nesbit arrested both individuals and
19  transported them to the Imperial Beach Border Patrol Station for processing.

20        Defendant MANZO-GAITAN contends that the government's factual version of his arrest is
21  incorrect. The Defendant has stated that his arrest happened as follows: He and some friends were gathered
22  socially in Tijuana, drinking beer and celebrating on December 24, 2007. The gathering was at a house near
23  the United States border that was so physically close to the fence that it actually used part of the fence as
24  a structural wall.  In this area, there are two fences that separate Mexico from the United States; a shorter
25  one followed by a taller one. In the area where Mr. Manzo-Gaitan was, the first fence is approximately
26  waist-high.

27        Though a group of persons were attempting to enter the United States illegally that night, Mr.
28  Manzo-Gaitan was not one of them.  He was drinking and celebrating with friends. The group attempting

to enter the United States began to retreat back into Tijuana when a Border Patrol agent appeared in a vehicle. The agent saw the several individuals fleeing into Mexico, mistook Mr. Manzo-Gaitan for one of them, an angrily grabbed onto him from the United States side of the fence. Because of the typography and natural and man-made features of the scene, the agent was able to reach over the fence and grab onto Mr. Manzo-Gaitan. The ground is uneven and substantially higher on the United States side of the fence. Additionally, the point where the agent pulled Mr. Manzo-Gaitan over the primary fence contained a concrete slab on which the agent stood. Photographs will be available to illustrate the scene.

The agent began pulling Mr. Manzo-Gaitan over the fence by his right arm. Mr. Manzo-Gaitan's friends, realizing what was happening, attempted to keep him in Mexico against the agent's violent efforts to pull him over the fence. A tug-of-war resulted, until Mr. Manzo-Gaitan yelled for his friends to let go because his arm was being injured in the process. Eventually the United States Border Patrol Agent won this tug-of-war, but as a result of the agent's actions, Mr. Manzo-Gaitan sustained deep abrasions and lacerations to his arm, which were observed and noted in his initial interview with defense counsel. The injuries to his arm were serious enough for the Border Patrol to take him to UCSD Medical Center for immediate treatment after he collapsed in custody.

After the tug-of-war ended, Mr. Manzo-Gaitan fell onto United States soil, hitting his head against the ground. The agents picked him up, knocked him against the vehicle, and threw him into the back of the car. A witness, Mr. Lopez-Mendoza, will testify that this story is true and accurate. Mr. Lopez-Mendoza was part of the group of persons attempting to enter the United States that night, and, after returning to Mexico, was one of the persons who held Mr. Manzo-Gaitan's leg in an attempt to keep him in Mexico. Mr. Lopez-Mendoza witnessed the entire event involving Mr. Manzo-Gaitan. He will testify that Mr. Manzo-Gaitan was not among the group attempting to enter the United States on the evening of December 24, 2007.

II.

<u>THE COURT SHOULD ACQUIT MR. MANZO-GAITAN OF THE CHARGE OF BEING A DEPORTED ALIEN FOUND IN THE UNITED STATES BECAUSE MR. MANZO-GAITAN WAS NEVER FREE FROM OFFICIAL RESTRAINT.</u>

It is well established that an "entry" has not been accomplished within the meaning of federal

immigration law until an individual is both: (1) physically present in the United States; and (2) free from official restraint. <u>United States v. Oscar</u>, 496 F.2d 492, 493 (9th Cir. 1974). In the Ninth Circuit, "mere physical presence on United States soil is insufficient to convict a person of being found in the United States in violation of 8 U.S.C. Section 1326." <u>United States v. Ruiz-Lopez</u>, 234 F.3d 445, 448 (9th Cir. 2000). To have "entered" the United States under Section 1326, an alien must not only have crossed our borders, but must be "exercising his free will" while physically present in this country. <u>United States v. Martin-Plascencia</u>, 532 F.2d 1316, 1317 (9th Cir. 1976). Accordingly, if an alien enters the United States free from official restraint, he or she has "entered" the country for the purposes of Section 1326. Conversely, if the alien is not free from official restraint while in the United States, the alien has not "entered" the United States as that term is used in Section 1326. <u>United States v. Pacheco-Medina</u>, 212 F.3d 1162, 1163 (9th Cir. 2000).

The concept of official restraint includes continuous surveillance from the border. "Under settled law, a person cannot be said to have been found in the United States, if he was under constant observation by the governmental authorities from the moment he set foot in this country until the moment of his arrest. <u>United States v. Castellanos-Garcia</u>, 270 F.3d 773, 775 (9th Cir. 2001). Thus, in <u>Pacheco-Medina</u>, an alien who was watched by a surveillance camera as he scaled a fence at the border, spotted as he dropped over onto United States soil and apprehended almost immediately by U.S. customs agents was not free from official restraint, and therefore had not entered the United States. <u>Pacheco-Medina</u>, 212 F.3d at 1165. This was true even though he was out of the agent's view for "a split second as he rounded a corner." <u>Id</u>. at 1163.

Like <u>Pacheco-</u>Medina, Mr. Manzo-Gaitan contends that he was under official restraint during his entry into the United States, and thus never "entered" the United States for purposes of Section 1326. He maintains that he had no intention to enter the United States and took no steps towards entry. Mr. Manzo-Gaitan was simply enjoying himself with some friends in Tijuana, Mexico on Christmas Eve. He happened to be extremely close to the border fence - close enough to be grabbed and pulled over it, thus, "officially restrained" as he was forced into the United States against his will.

As Mr. Manzo-Gaitan was pulled over the fence that separates Mexico and the United States, he was at no time free from the custody of the government while on United States soil. At no time was he able to

exercise free will within this country - it was not even his decision to enter.  Mr. Manzo-Gaitan was not simply constantly surveilled throughout his time in the United States, but was physically in the custody of the United States Border Patrol even before he entered.  Mr. Lopez-Mendoza is willing to testify as the to events of the night of December 24, 2007.   His statements, coupled with the fact that Mr. Manzo-Gaitan was, at all times within the United States,  literally in the hands of the Border Patrol agents, corroborates Mr. Manzo-Gaitans's contention that he was at no time free from official restraint.   Thus, Mr. Manzo-Gaitan never "entered" the United States within the meaning of Section 1326.

### III.
### INCONSISTENCIES FROM THE AGENT'S REPORT AND WITNESS ACCOUNTS WARRANT CLARIFICATION THROUGH AN EVIDENTIARY HEARING

Border Patrol Agent Yesenia A. Navarro's narrative report is strikingly different from Mr. Manzo-Gaitan and Mr. Lopez-Mendoza's version of the events.  The report states that Mr. Manzo-Gaitan was apprehended after a short pursuit and that he had been part of a group of persons who attempted to enter the United States and then returned back to Mexico.  However, Mr. Manzo-Gaitan and Mr. Lopez-Mendoza both state that this was not the case.  Agent Navarro's report does corroborate that Mr. Manzo-Gaitan had a lacerated arm and collapsed in the processing area, however, the report states that the injuries were sustained while Mr. Manzo-Gaitan climbed over the fence.  The report also states that Mr. Manzo-Gaitan made some incriminating statements during questioning on December 26, 2007, but the video that the government provided does not contain any of these statements.  The video contains statements that are wholly unrelated to the instant offense.  We have ordered a transcript of the video to be translated into English and are awaiting its completion. The inconsistences between the two stories must be clarified in order for Mr. Manzo-Gaitan to prove that he was under official restraint at all times. The resolution and explanation of the aforementioned issues and others are integral to Mr. Manzo-Gaitan's case and warrant further clarification and depth.  These discrepancies and inconsistencies could be clarified and resolved if the Court will grant the defendant's request for an evidentiary hearing.  It seems reasonable to believe than

an evidentiary hearing may even be dispositive of the case.

## V.
## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant the above motions.

Respectfully submitted,

Dated: September 11, 2008   /s/ROBERT C. SCHLEIN
Robert C. Schlein
Attorney-at-Law
Attorney for Defendant MANZO-GAITAN
robert@rcslaw.org