ROBERT C. SCHLEIN SBN: 97876
ROBERT C. SCHLEIN AND ASSOCIATES
401 B STREET, SUITE 2220
SAN DIEGO, CALIF.92101-4245
(619) 235-9026
Fax: (619) 235-9057

Attorney for Ezequiel Manzo-Gaitan

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**(Honorable Janis L. Sammartino)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08cr0094-JLS |
| Plaintiff, ) | Date: September 26, 2008 |
| v. ) | Time: 2 p.m. |
| EZEQUIEL MANZO-GAITAN ) | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE DEFENDANT'S POST-ARREST STATEMENTS TO THE GOVERNMENT REGARDING PRIOR ALIEN SMUGGLING ACTIVITY IN MEXICO** |
| a.k.a. Francisco Mejia-Anancleto, ) | |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**

The following statement of facts is based, in part, on materials received from the government. The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard. Defendant MANZO-GAITAN is named in a single count indictment, dated January 9, 2008, alleging that he is a deported alien found in the United States after previously being deported, as follow:

**Count 1**

"On or about December 24, 2007, within the Southern District Of California, defendant EZEQUIEL MANZO-GAITAN, an alien, who previously had been excluded, deported and removed from the United States to Mexico, was found in the United States, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title

6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Sections 1326(a) and (b).

It is further alleged that defendant EZEQUIEL MANZO-GAITAN was removed from the United States subsequent to May 20, 1999."

A superceding one-count indictment was filed on March 5, 2008, alleging:

### Count 1

"On or about December 24, 2008, within the Southern District of California, defendant Ezequiel Manzo-Gaitan, an alien, knowingly and intentionally attempted to enter the United States of America with the purpose, i.e. conscious desire, to enter the United States without the express consent of the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, after having been previously excluded, deported and removed from the United States to Mexico, and not having obtained said express consent to reapply for admission thereto; and committed an overt act to wit, crossing the border from Mexico into the United States, that was a substantial step toward committing the offense, all in violation of Title 8, United States Code, Sections 1326(a) and (b).  It is further alleged that defendant Ezequiel Manzo-Gaitan was removed from the United States subsequent to May 20, 1999.

These charges were filed against Defendant MANZO-GAITAN pursuant to his arrest on December 24, 2007.  The government alleges that the following facts are the basis for his arrest: At approximately 11:55 P.M., the RVSS (Remote Video Surveillance System) operator advised via agency radio that a group of individuals running north from the Primary border fence near the area commonly known as "Libertad". This area is approximately two miles east of the San Ysidro, California, Port of Entry. While performing All Terrain Vehicle (ATV) operations, Senior Patrol Agent J. Nesbit, responded to the area. The government alleges that defendant EZEQUIEL MANZO-GAITAN and a partner attempted to return south into Mexico after the arrival of Agent Nesbit. After a short pursuit, Agent Nesbit conducted an immigration inspection on both individuals. Allegedly without proper documents, Agent Nesbit arrested both individuals and transported them to the Imperial Beach Border Patrol Station for processing.

1   Defendant MANZO-GAITAN contends that the government's factual version of his arrest is
2   incorrect. The Defendant has stated that his arrest happened as follows: He and some friends were
3   gathered socially in Tijuana, drinking beer and celebrating on December 24, 2007. The gathering was
4   at a house near the United States border that was so physically close to the fence that it actually used
5   part of the fence as a structural wall. In this area, there are two fences that separate Mexico from the
6   United States; a shorter one followed by a taller one. In the area where Mr. Manzo-Gaitan was
7   apprehended, the first fence is approximately waist-high.

8   Though a group of persons were attempting to enter the United States illegally that night, Mr.
9   Manzo-Gaitan was not one of them. He was drinking and celebrating with friends. The group
10  attempting to enter the United States began to retreat back into Tijuana when a Border Patrol agent
11  appeared in a vehicle. The agent saw the several individuals fleeing into Mexico, mistook Mr. Manzo-
12  Gaitan for one of them, an angrily grabbed onto him from the United States side of the fence. Because
13  of the topography and natural and man-made features of the scene, the agent was able to reach over the
14  fence and grab onto Mr. Manzo-Gaitan. The ground is uneven and substantially higher on the United
15  States side of the fence, and, the point where the agent pulled Mr. Manzo-Gaitan at the primary fence
16  contained a concrete slab on which the agent stood. Photographs will be available to illustrate the
17  scene.

18  The agent began pulling Mr. Manzo-Gaitan over the fence by his right arm. Mr. Manzo-Gaitan's
19  friends, realizing what was happening, attempted to keep him in Mexico against the agent's violent
20  efforts to pull him over the fence. A tug-of-war resulted, until Mr. Manzo-Gaitan yelled for his friends
21  to let go of his body because the agent was dragging his arm over the top of the sharp fence and the arm
22  was being injured in the process. When his companions let go, the Agent pulled him over the fence
23  and into the United States. As a result of the agent's actions, Mr. Manzo-Gaitan sustained deep
24  abrasions and lacerations to his arm, which were observed and noted in his initial interview with
25  defense counsel. The injuries to his arm were serious enough for the Border Patrol to take him to
26  UCSD Medical Center for immediate treatment and sutures after he collapsed in custody.

27  After the tug-of-war ended, Mr. Manzo-Gaitan fell onto United States soil, hitting his head against
28  the ground. The agents picked him up, knocked him against the vehicle, and threw him into the back of

1  the car.

2  After his arrest, Mr. Manzo-Gaitan spoke at length with government agents about prior alien
3  smuggling activity in Mexico. On April 10, 2008, Mr. Manzo-Gaitan de-briefed with the government
4  and in the presence of Assistant United States Attorney Charlotte Kaiser. During this debrief, he
5  disclosed more information related to alien smuggling in Mexico in the past.

**Motion in *Limine* Number I**

**MR. MANZO-GAITAN'S STATEMENTS TO THE GOVERNMENT REGARDING ALIEN SMUGGLING IN MEXICO SHOULD BE EXCLUDED**

8  Even when all of the other requirements of "extrinsic acts" evidence are met, the evidence may be
9  accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair
10  prejudice to the defendant. Fed. R. Evid. 403. Rule 403 provides "[a]lthough relevant, evidence may
11  be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." As to
12  a criminal defendant, Rule 403's term "unfair prejudice" speaks to the capacity of some concededly
13  relevant evidence to lure the fact finder into declaring guilt on an improper basis rather than on proof
14  specific to the offense charged. Old Chief, 519 U.S. at 173 (9th Cir. 1997). Such improper grounds
15  certainly include generalizing from a past bad act that a defendant is by propensity the probable
16  perpetrator of the current crime. Id. In this case, evidence of Mr. Manzo-Gaitan's prior knowledge of
17  alien smuggling may lead the jury to a conviction based upon the improper basis of propensity.
18  Knowing of the nature and substance of the defendant's disclosures to the government may obfuscate
19  the current case and make it unduly difficult for jurors to separate his statements from the instant case.
20  This result is exactly what Rule 403 forbids. Therefore, evidence of Mr. Manzo-Gaitan's statements
21  regarding alien smuggling in Mexico in the past should be excluded.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

## III.

## CONCLUSION

For the foregoing reasons the defense requests that the Court grant EZEQUIEL MANZO-GAITAN'S motion *in limine*.

Respectfully submitted,

Dated: September 12, 2008

s/Robert C. Schlein
Robert C. Schlein
Robert Schlein and Associates
Attorney for Ezequiel Manzo-Gaitan